IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MONICA JEFFRIES** | * | |
| | * | |
| v. | * | |
| | * | Civ. No. PJM 10-0691 |
| **GAYLORD ENTERTAINMENT, ET AL.** | * | Civ. No. PJM 10-2418 |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

The Court once again revisits the suit of *pro se* Plaintiff Monica Jeffries against her former employer, Gaylord Entertainment and Gaylord National Resort and Convention Center (hereinafter, "Gaylord") for violations of the Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq.* ("ADA"). Jeffries claims that Gaylord failed to provide reasonable accommodations for disabilities related to her breast cancer diagnosis and subsequent treatment, then terminated her in retaliation for complaining about Gaylord's failure to provide the requested accommodations.[1] This Court previously dismissed Jeffries' claims for hostile work environment based on sex and disability. *See Jeffries v. Gaylord National Resort and Convention Center, et al.*, 2011 WL 3158602, at *2 (D. Md. July 22, 2011). Pending before the Court are the following motions:

- Jeffries' "Motion to Proceed with Summary Judgement Count One of Two Response to Plaintiffs Second Request for Production of Documents Regarding ADA Parking (Reasonable Accommodation)" (Paper No. 92);

- Defendants' Motion for Summary Judgment (Paper No. 98);

- Jeffries' "Motion for Summary Judgement Surreply, Memorandum, Points and Authorities" (Paper No. 103);

---

[1] Jeffries is a familiar litigant to this Court. *See, e.g., Jeffries v. Mercedes-Benz Credit Corp.*, 211 F. App'x 201 (4th Cir. 2006) (dismissing appeal); *Jeffries v. Pacific Land Money Purchase Pension Plan and Trust*, CIV. PJM-09-2247 (D. Md. Aug. 31, 2009) (dismissing case for lack of subject matter jurisdiction); *Jeffries v. Grady Management*, CIV. DKC-12-1942 (D. Md. July 17, 2012) (dismissing slip-and-fall suit for lack of subject matter jurisdiction).

- Defendants' Motion to Strike Plaintiff's Motion for Summary Judgment, Surreply, Memorandum, Points and Authorities or, in the Alternative, Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Paper No. 107); and

- Jeffries' "Motion to File Additional Briefings Per Plaintiff, Per this Court Order" (Paper No. 110).

For the reasons that follow, the Court **DENIES** Jeffries' Motions for Summary Judgment (Paper Nos. 92 and 103), her Motion to File Additional Briefings (Paper Nos. 110), and Gaylord's Motion to Strike (Paper No. 107), and **GRANTS** Gaylord's Motion for Summary Judgment (Paper No. 98).

**I.**

Jeffries began her employment as a "turndown attendant" at Gaylord, a hotel and convention center located in Prince George's County, in March 2008. Her job was to prepare rooms for guests before they retire for the evening, which included replenishing linens, emptying trash, vacuuming the floors, and providing various amenities. Turndown attendants work one of two shifts: an evening shift that runs from 3:00 p.m. to 11:00 p.m., or an overnight shift that runs from 11:00 p.m. to 7:00 a.m. Jeffries began working the evening shift, but switched to the overnight shift on April 22, 2008.

Although it is not entirely clear from the record when the diagnosis occurred, Jeffries was at some point diagnosed with breast cancer requiring chemotherapy, so she took personal leave after approximately two months of employment at Gaylord. Although she was only eligible for sixty days of leave, Gaylord authorized her to be on leave for several months, from May 8, 2008 until October 8, 2008.[2]

On October 2, 2008, Jeffries resumed her work as a turndown attendant and asked her supervisor for access to a handicap-accessible parking space. Gaylord's policy is that an

---

[2] Jeffries was not eligible for short-term disability or leave pursuant to the Family Medical Leave Act because she had only been employed at Gaylord for approximately two months.

employee who requests a parking space as an accommodation "must produce sufficient medical information to make a reasonable accommodation decision for a parking pass." In accordance with that policy, the supervisor asked Jeffries to explain why she needed a handicap-accessible parking space, to which Jeffries replied "well, I don't have to disclose that." Jeffries then renewed her request for a pass to park in a handicap-accessible parking space. A Gaylord representative again requested documentation of her medical need for a pass, and in response, Jeffries delivered a copy of a state-issued handicap parking placard and the Maryland Vehicle Administration application for the placard.[3] Gaylord eventually provided her with a parking pass in September 2009.

During one of her shifts, Jeffries, who had apparently lost her hair due to chemotherapy, was asked by one of her supervisors to "wrap her head up." Jeffries refused and complained to another shift manager about the request. According to Jeffries:

> She said, well, Monica, what are you going to do. I said, well, I guess I don't have a choice. I guess I have to get something put on my head.
>
> So until I was able to get with the seamstress who works during the daytime, they gave me – the defendants gave me a black chef's hat. It's like a little – like a little hat that the chefs wear but it was black – until I could get the seamstress for the hotel to make a wrap for my head.

On March 6, 2009, Jeffries took her second leave from employment. She applied for and was granted short-term disability leave, which began on March 25, 2009. Because Gaylord provides short-term disability for a maximum of twenty-five weeks, Jeffries' short-term disability leave expired on September 23, 2009.

When Jeffries returned to work from short-term disability, she had a meeting with various representatives at Gaylord to discuss the work restrictions that her physician had prescribed. She advised that her physician had imposed two work restrictions: no overnight shifts and "duties as

---

[3] The record does not disclose what information was contained in the application.

tolerated." As a result, Jeffries requested that she no longer work overnight shifts, and instead be permitted to work a day shift from 7:00 a.m. to 3:00 p.m. Gaylord representatives advised that there was no day shift for the position of turndown attendant, but offered her the opportunity to work only evening shifts, which she accepted.

Jeffries then requested an "internal transfer" from her position as a turndown attendant to "group housing coordinator," a position within the reservations department. Gaylord did not grant this request; the group housing coordinator position was a two-step promotion in a different department from the one in which she worked.

Jeffries was scheduled to return to work full-time on October 5, 2009. She confirmed that as her new start date in an e-mail. She did not, however, appear for work on that day, instead advising Gaylord that she was scheduled for hand surgery. At or about that time, she submitted a "certificate of disability" from her physician stating that she was disabled and would not be able to return to work until November 17, 2009. On November 3, 2009, Jeffries submitted another "certificate of disability" from her physician, which indicated that she was disabled and "may not return to work."

On November 3, Gaylord sent her the following letter:

Monica,

We have been trying to get in contact with you via phone to no avail. We are writing to communicate with you in regard to the current situation as it pertains to your employment.

. . . We . . . understand from the disability certificate dated 10/5/09 that you can not [sic] work. At this time all FMLA rights have been exhausted so we are no longer required to hold your position.

Given all of this, we need to know if it is your intention to resign. You are currently on an unapproved leave. You have the option to apply for short term disability; however you would be on unapproved leave and unpaid leave while

4

> this is pending. We would not hold your position if the short term disability was approved.
>
> Please respond in writing or via email before 5:00 pm on 11/6/09 as to your intentions. If we do not hear from you by then, we will process the separation of employment.

Jeffries responded that she would not resign and requested that Gaylord hold her position open. By letter dated November 20, 2009, Gaylord advised Jeffries that, as of November 18, it had terminated her employment, noting that even as of that date she had still not yet applied for short-term disability leave, and that Gaylord could no longer "continue to have you out on an unapproved and unpaid leave."[4]

Jeffries eventually sued Gaylord, alleging, among other things, that it violated the ADA when it: (1) delayed providing her with a handicap-accessible parking pass; (2) refused to transfer her to the position of "group housing coordinator"; (3) denied her request to work a *day* shift from 7:00 a.m. to 3:00 p.m.; and (4) terminated her in retaliation for "ma[king] a big stink about the accessible parking for the employees and . . . about Gaylord forcing me to wrap my bald head up."

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is one where the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A material fact is one that might affect the outcome of the lawsuit, given the relevant law. *Erwin v. United States*, 591 F.3d 313, 320 (4th Cir. 2010). When

---

[4] Sometime after she was terminated, Jeffries claims she met with various Gaylord representatives who "indicated that they would give me my job back if I dropped my lawsuit." Nothing appears to have come of the apparent offer and the Court fails to see the relevance of the offer, even if made and later withdrawn.

assessing a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in his or her favor. *Dulaney*, 673 F.3d at 330. A nonmoving party may not, however, defeat summary judgment by making assertions lacking sufficient factual support or by relying on a mere "scintilla of evidence." *American Arms International v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal citations and quotations omitted).

**A.**

Jeffries contends that Gaylord violated the ADA when it failed to provide her with certain accommodations. Specifically, she argues that Gaylord delayed providing her with a handicap-accessible parking spot, refused to alter her working hours to a day shift, and declined her request for a transfer to a position as group housing coordinator. Gaylord takes the position that Jeffries has not made out a prima facie case of discrimination and that her proposed accommodations were unreasonable as a matter of law. The Court agrees with Gaylord.

The ADA makes it unlawful for an employer to discriminate against an otherwise qualified employee on the basis of his or her disability. 42 U.S.C. § 12112(a). Discrimination includes, among other things, failing to provide "reasonable accommodations to the known physical or mental limitations of" an employee, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." *Id.* § 12112(b)(5)(A). In a "failure to accommodate" case, a plaintiff establishes a prima facie case by showing that: (1) she had a disability within the meaning of the statute; (2) the employer had

notice of the disability; (3) she could perform the essential functions of her position with a reasonable accommodation; and (4) the employer refused to provide the accommodation. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

While the Court accepts that Jeffries' post-operative breast cancer condition constitutes a disability within the meaning of the ADA, Jeffries' claim fails on every other element of the test for making out a prima facie case of discrimination. With respect to Gaylord's delay in providing her with a handicap-accessible parking space, Jeffries failed to provide Gaylord with appropriate notice as to the precise nature of her disability. An employee has the burden of providing to the employer the information necessary for making the reasonable accommodation decision. *Stewart v. Weast*, 228 F. Supp. 2d 660, 663 (D. Md. 2002). It is undisputed that Jeffries refused to provide documentation about her disability in connection with her requests for the parking space. She refused to identify either the nature or extent of her disability to her supervisor, explaining "I don't have to disclose that." The burden, however, was on Jeffries to provide Gaylord with information about her specific disability so that it could, in turn, make a decision about whether providing the handicap-accessible parking space was a reasonable accommodation. *Id.* For so long as Jeffries refused to explain her reasons, she failed to meet her burden as to notice and impermissibly obstructed Gaylord's ability to assess whether a parking pass was warranted or whether an alternative accommodation was appropriate. *See Steffes v. Stepan Co.*, 144 F.3d 1070, 1072 (7th Cir. 1998) (observing that an employee's failure to clarify "the nature and extent" of her disability warrants summary judgment because such conduct impairs the employer's ability to engage in an interactive process about providing a reasonable accommodation). Eventually, after Jeffries explained the basis of her need, Gaylord did make the parking pass available.

Jeffries' also fails to establish a prima facie case of discrimination as to Gaylord's failure to alter her working hours to a day shift. But simply put, there was no "day shift" for the position of turndown attendant – Jeffries herself acknowledges that turndown attendants only worked one of two shifts: an evening shift from 3:00 p.m. to 11:00 p.m., or an overnight shift from 11:00 p.m. to 7:00 a.m. Her request that Gaylord invent a new shift for her was, therefore, unreasonable. "[T]he duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of [her] present position." *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995). Moreover, Jeffries' request that Gaylord alter the nature of her job by creating a new shift only for her is a clear indication that she was unable to perform the essential functions of her position. *See Rhoads*, 257 F.3d at 387 n.11.

Jeffries' third claim is that Gaylord did not reasonably accommodate her by agreeing to transfer her to another job, specifically the position of group housing coordinator. Again, Jeffries fails to make out a prima facie case of discrimination. True, Jeffries applied for the position of group housing coordinator in the reservations department. But that position amounted to a two-step promotion above the position of turndown attendant and was in a different department from the one in which Jeffries worked. In essence, Jeffries was asking for an accommodation that would springboard her to a two-step promotion into a new position in a different department in which she had no demonstrated experience. This request was patently unreasonable, and is in no sense contemplated by the ADA. *See Myers*, 50 F.3d at 284. Although the ADA "may require the employer to 'reassign,' i.e., transfer, the disabled employee to a vacant position as a reasonable accommodation," it does not "require the employer to

8

promote a disabled employee." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001).

**B.**

Jeffries next asserts that Gaylord terminated her employment in retaliation for her making "a big stink about the accessible parking . . . and . . . about Gaylord forcing me to wrap my bald head up." Gaylord responds that there is no causal link between Jeffries' conduct and its decision to terminate her employment. It further asserts that even if Jeffries could make out a prima facie case for retaliation, she cannot demonstrate that Gaylord's legitimate and non-retaliatory reason for terminating her was a pretext for discrimination. Here, too, the Court agrees with Gaylord.

It is unlawful for an employer to retaliate against an individual who makes charges of discrimination pursuant to the ADA. 42 U.S.C. § 12203(a). To establish a prima facie claim for retaliation, Jeffries must prove that: (1) she engaged in protected conduct; (2) she suffered an adverse action; and (3) there is a causal link between her protected conduct and the adverse action. *Reynolds v. American National Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). She may either produce direct evidence of discrimination or indirect evidence that raises a genuine issue of material fact. *Rhoads*, 257 F.3d at 391-92. As there is no direct evidence of retaliation, Jeffries must proceed under the burden-shifting method. *Id.* at 391. In any event, even if Jeffries could establish a prima facie claim of retaliation, the burden would shift to Gaylord to rebut the presumption by raising a legitimate nonretaliatory reason for its actions. *Id.* If Gaylord could rebut the presumption, the burden would then shift back to Jeffries to show that Gaylord's reason was a pretext for unlawful retaliation. *Id.*

9

Jeffries' claim fails because nothing whatsoever in the record suggests a causal link between Gaylord's decision to terminate her and her complaints about handicap-accessible parking or about being asked to cover her head. With respect to retaliation for accessible parking, Jeffries' complaints were much too distant in time from Gaylord's decision to terminate her to establish a causal connection based on temporal proximity alone. *See Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (internal citation omitted). Jeffries was terminated on November 18, 2009. According to her own testimony, she complained about the lack of accessible parking between October 2008 and March 2009. At a minimum, six months passed between the end of her complaints and the decision to terminate her. This is too attenuated a temporal connection to give rise to a fair inference that Gaylord's decision was causally connected to Jeffries' complaints. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) ("[T]he passage of time (nine to ten months in this case) tends to negate the inference of discrimination.").

With respect to complaining about being asked to wrap her head, assuming that the request was unreasonable (a debatable proposition), Jeffries' complaints were directed at people who had no demonstrated role the decision to terminate her employment, indeed who have in no way been shown to have been aware of her complaint. In other words, there is nothing in the record to suggest that a causal connection between Jeffries' complaints and her termination. While Jeffries has stated that she had a confrontation about covering her head with "Bruce" and "Elizabeth," the record remains unchallenged that Veronica Whitley, Karen DiFulgo, and Brad

Halford made the decision to terminate Jeffries' employment with Gaylord. There is simply no evidence to suggest that these individuals had any knowledge of Jeffries' objections to being asked to cover her head, a necessary predicate to establishing the notice element for making out prima facie case. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").[5]

Apart from the foregoing, even if Jeffries were able to state a prima facie case for retaliation, she cannot meet her burden of showing that Gaylord's legitimate and nonretaliatory reasons for terminating her – that she was unable to perform her job and was out on extended unapproved and unpaid leave – was a pretext for discrimination. Jeffries' employment history indicates that she was consistently unable to attend work on anything like a regular basis: in her approximately 21-month long tenure at Gaylord, she worked only approximately 9 months. She began working at Gaylord in March 2008, and took personal leave approximately two months later, beginning on May 8, 2008. She returned to work six months later, on October 8, then after five months of work took a second leave of absence/short-term disability beginning on March 6, 2009. She returned to work on September 11, 2009, and after a few meetings with various human resources personnel, was set to return to work full-time on October 5, 2009. But rather

---

[5] Jeffries maintains that, at a meeting arranged after her termination, Gaylord representatives offered her her job back in exchange for dropping her lawsuit. Jeffries suggests that this amounted to retaliation. The argument is misguided. Antiretaliation provisions "protect[] an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). An offer of reinstatement under these circumstances is not retaliation because it is not an *adverse* action that results in any injury or harm; the purported injury, termination, has already been done. Moreover, an offer of reinstatement as consideration for ending a lawsuit is a settlement offer, and settlement offers or statements made during settlement discussions are inadmissible if offered to prove liability or damages. Fed. R. Evid. 408(a); *Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992). Courts may only consider admissible evidence when determining whether there is a genuine issue of material fact. *See* Fed. R. Civ. P. 56(b)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing . . . that an adverse party cannot produce *admissible* evidence to support the fact.") (Emphasis added).

than appearing for work, she submitted a "certificate of disability" from her physician, stating that she was disabled by reason of an injury to her hand, and would not be able to return to work until November 17, 2009. Thereafter, she submitted another certificate of disability from her physician, indicating that she was disabled and "may not return to work." The last certificate did not specify when, if ever, Jeffries might be able to return to work. An employee's ability to attend work regularly has long been established as a prerequisite to performance of any job function, essential or otherwise. *See Tyndall v. National Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) ("In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis."). Jeffries' work history is the antithesis of an employee who is regularly able to attend work.

During her tenure with Gaylord, Jeffries may well have been entitled to some leave. The record suggests that she was battling breast cancer and that in fact much of her leave was approved. The ADA, however, does not require that an employer "give a disabled employee 'an indefinite period of time to correct [a] disabling condition' that renders him [or her] unqualified." *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 465 (4th Cir. 2012). The law attempts to strike a fair balance, creating protections for workers while at the same time recognizing that employers cannot be forever burdened by taking on the costs of employees who are ultimately incapable of showing up for work. The record is devoid of any suggestion that Gaylord's concern about Jeffries' ability to perform her job by attending work regularly was a pretext for discrimination. Quite to the contrary, the only record evidence suggests that Gaylord went very much out of its way to accommodate Jeffries by providing every reasonable accommodation. When Gaylord declined to provide certain of the accommodations Jeffries

requested, it was because she was either asking to alter the essential functions of her job, or to receive an unwarranted promotion, or to obtain an accommodation without having to comply with legitimate company policies. Her claims, in sum are either unsupported or unsupportable.

* * *

For the foregoing reasons, the Court **GRANTS** Gaylord's Motion for Summary Judgment (Paper No. 98), and **DENIES** all remaining motions (Paper Nos. 92, 103, 107, and 110). Final judgment is entered in favor of Gaylord on all counts.

A separate Order will **ISSUE**.

                                                                           /s/
                                      **PETER J. MESSITTE**
                             **UNITED STATES DISTRICT JUDGE**

**Date: March 26, 2013**